T.C. Memo. 2017-100

UNITED STATES TAX COURT

CAROLYN F. WHITSETT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10627-15.                    Filed June 1, 2017.

Frank Agostino, Jeff M. Dirmann, and Eugene Kirman, for petitioner.

Alex Schlivko, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, Judge:  The Internal Revenue Service (IRS or respondent) deter-mined a deficiency of $541,552 in petitioner's 2012 Federal income tax and an accuracy-related penalty of $107,995.  Before trial the parties stipulated a reduced deficiency and (if we conclude that a penalty is due) a correspondingly reduced

[*2] penalty, to be determined by the parties' Rule 155 computations.[1]  The only issue for decision is whether petitioner is liable for the penalty.  We hold that she is not.

FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.  Petitioner resided in New York when she filed her petition.

Petitioner, who was 70 years old at the time of trial, is a doctor specializing in blood transfusions.  In 1982 she and her then husband purchased 4,000 shares of Immucor, Inc. (Immucor) common stock for $11,000.  In 1998 she and her then husband separated.  Under the terms of their divorce settlement, she became the sole owner of the Immucor shares.

In July 2011 TPG Capital (TPG) agreed to acquire Immucor and made an offer to Immucor's shareholders to purchase their stock for $27 per share.  At that time petitioner owned (thanks to stock splits, among other things) 63,594 shares of Immucor stock.  In August 2011 she notified her longtime tax return preparer, Joe Whittemore, that she intended to accept TPG's offer.  She did in fact accept its

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all monetary amounts to the nearest dollar.

[*3] offer, and on December 21, 2011, she completed and submitted the required stock redemption form.

In January 2012 TPG's agent, Computershare Trust Co. (Computershare), sent petitioner a check, dated January 4, 2012, for $1,717,038 (63,594 shares × $27 per share). This check was accompanied by a document captioned "Corporate Action Advice" that showed the "payment date" as August 19, 2011, and the "tax year" as 2012. Computershare also enclosed a letter dated January 9, 2012, stating that petitioner's stock redemption was "processed" as of January 4, 2012.

On January 11, 2012, petitioner contacted Mr. Whittemore to bring to his attention the documents she had received. Mr. Whittemore had originally prepared returns for petitioner's ex-husband and continued to do so for her after the couple separated in 1998. Mr. Whittemore has provided tax return preparation services for more than 25 years; before founding his own company, PM Group-Atlanta, Inc., in 1995, he worked as a return preparer for several small firms. He prepares on average 100 to 125 returns each year, primarily for doctors and dentists.

After speaking with petitioner and reviewing the documents she provided, Mr. Whittemore decided (erroneously) that 2011 was the proper tax year for which to report her gain from the sale of the Immucor stock. To determine her gain, he

**[*4]** first subtracted from the sale proceeds her original cost basis of $11,000, which he obtained by calling a stockbroker to obtain the average selling price for the Immucor stock on the purchase date. He then subtracted what he thought were reinvested dividends of $628,437, which he apparently obtained by looking at petitioner's prior tax returns. On the basis of this calculation he determined that petitioner had a long-term capital gain for 2011 of $1,077,601 ($1,717,038 – $639,437).

Mr. Whittemore needed additional time to prepare petitioner's 2011 return. He accordingly prepared a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Tax Return, and sent it to petitioner. Petitioner signed the Form 4868, and either she or Mr. Whittemore mailed it to the IRS. The IRS processed the extension request and reflected it on her account as of April 11, 2012.

The Form 4868 showed an estimated balance due of $154,776, attributable mostly to the Immucor stock sale. Mr. Whittemore testified that he had derived this estimate by adding the expected tax on that stock sale to petitioner's prior year tax liability. On the basis of the Form 4868 and an instruction letter from Mr. Whittemore, petitioner sent the IRS a check for $154,776, dated May 16, 2012, to

**[*5]** cover her estimated balance due for 2011. The IRS applied this payment to her 2011 account; this payment is still being held as a credit for 2011.

Mr. Whittemore prepares returns for his clients using "organizers." The client answers questions included in the "organizer" and attaches the requested documents. Petitioner included with her "organizer" for the 2011 taxable year all of the documents she had received from Computershare in January 2012 regarding her sale of the Immucor stock.

Mr. Whittemore did not file petitioner's 2011 return by the extended due date, October 15, 2012. On February 19, 2013, he sent her a letter accompanied by a completed copy of her 2011 return. This document reported the sale of the Immucor stock and showed a balance due of $5,393 after taking into account the $154,776 payment petitioner had made in May 2012. Mr. Whittemore sent petitioner an email concurrently with the completed 2011 return and a letter stating that he had "filed the return electronically."

Mr. Whittemore enclosed with this letter a Form 1040-V, Payment Voucher, and instructed petitioner to mail this form with her payment to the IRS. Petitioner complied with his instructions and, on March 4, 2013, sent the IRS a check for $5,393 accompanied by the Form 1040-V. The IRS posted this payment to her 2011 account on March 6, 2013.

**[*6]** Mr. Whittemore did not in fact file petitioner's 2011 return. The IRS has no record of ever having received that return. Mr. Whittemore could not produce any document to verify successful efiling of the return. Nor could he produce any document (such as a "bounce back" message) evidencing that he had attempted an efiling that the IRS rejected.

Unaware of these facts, petitioner retained Mr. Whittemore to prepare her 2012 return. Mr. Whittemore again prepared, and she submitted to the IRS, a Form 4868 requesting an automatic extension of time to file. Mr. Whittemore sent her a 2012 "organizer" sometime during the first half of 2013. She filled it out, enclosed the documents called for, and returned the organizer to Mr. Whittemore on October 7, 2013. She enclosed a letter noting her belief that she had sold the Immucor stock in 2011.

Sometime in early 2013 Computershare sent petitioner a Form 1099-B, Proceeds From Broker and Barter Exchange Transactions, for the Immucor sale. This form reported gross proceeds of $1,717,038 and showed the sale date as January 4, 2012. Petitioner provided this form to Mr. Whittemore shortly after receiving it.

After reviewing all of the documents petitioner had provided to him, Mr. Whittemore determined that no capital gain attributable to the Immucor stock sale needed to be reported on petitioner's 2012 return because he had already reported

[*7] (or thought he had reported) that income on her 2011 return. He accordingly did not include a Schedule D, Capital Gains and Losses, with the 2012 return, which he filed (late) on November 4, 2013.

On December 9, 2013, petitioner received a CP80 notice from the IRS stating that her 2011 account had a credit of $165,562 but that no 2011 return had been filed. She promptly sent the IRS a letter expressing her understanding that Mr. Whittemore had filed her 2011 return electronically. She enclosed with this letter a copy of the 2011 return that he had provided to her.

Two days later she sent the IRS a second $5,393 check for 2011, attached to another Form 1040-V. She could not remember why she did this. It was evidently a response to the CP80 letter, perhaps prompted by her uncertainty as to whether she had previously paid the $5,393 balance due for 2011. The IRS credited this second $5,393 payment to her 2011 account on December 13, 2013.

On January 6, 2014, petitioner emailed Mr. Whittemore and asked him whether it would be advisable to send the IRS another copy of her 2011 return for processing. He replied that there was no need to do this because he had already efiled it. On September 15, 2014, the IRS sent petitioner a second CP80 notice that again showed a large credit balance on her 2011 account but again stated that no 2011 return had been filed. Petitioner responded to this notice on October 18,

[*8] 2014, again noting her understanding that her 2011 return had been electronically filed.

On October 27, 2014, the IRS sent petitioner a CP2000 notice for her 2012 taxable year. That notice, triggered by Computershare's Form 1099-B reporting $1,717,038 in gross proceeds from the Immucor stock sale, informed petitioner that she had a balance due of $680,086 for 2012. Now quite worried, petitioner sent Mr. Whittemore the CP80 notice for 2011 and the CP2000 notice for 2012 and asked him what was going on. He emailed her and told her to execute a Form 2848, Power of Attorney and Declaration of Representative, so that he could speak with the IRS on her behalf to discuss these notices. In four subsequent email exchanges during the ensuing three months, Mr. Whittemore assured petitioner that he was communicating with the IRS on her behalf with regard to her 2011 and 2012 taxable years.

In an email dated February 2, 2015, Mr. Whittemore informed petitioner, for the first time, that the proceeds from the Immucor stock sale should have been reported on her 2012 return. In this email he stated that he was preparing two Forms 1040X, Amended U.S. Individual Income Tax Return, to remedy this problem. He said that he would prepare an amended return for 2012 to report the stock sale and an amended return (it would actually have been the original return) for 2011 re-

[*9] porting no capital gain.  He informed petitioner that he could not file these returns electronically and that he would send paper amended returns for her to file.  Petitioner credibly testified that she never received these returns, and there is no evidence that such amended returns were ever filed.

After receiving no response to the CP2000 notice, the IRS issued petitioner a notice of deficiency for 2012 determining a deficiency of $541,552 and an accuracy-related penalty under section 6662(a) of $107,995, attributable chiefly to the unreported proceeds from the Immucor stock sale.[2]  After receiving this notice of deficiency petitioner realized that something had gone seriously wrong.  She sought new assistance and ultimately hired counsel to represent her.

On April 10, 2015, counsel for petitioner prepared and filed a 2011 return that (correctly) did not report the Immucor stock sale proceeds.  This return, which functioned as a protective refund claim, reported an overpayment of $174,359 for 2011, which petitioner designated to be applied against her 2012 tax liability.[3]

---

[2]The IRS made computational adjustments to petitioner's claimed medical expense deductions and miscellaneous deductions on her Schedule A, Itemized Deductions.  The IRS also determined that petitioner had overpaid Social Security tax by $1,575.  Although the former adjustments may be affected by the Rule 155 computation, they will remain purely computational.

[3]Before trial the parties stipulated that, solely for purposes of this case and for purposes of computing the section 6662(a) accuracy-related penalty for taxable

(continued...)

[*10]  On April 24, 2015, petitioner timely petitioned this Court for redetermination of the deficiency and the penalty.  Before trial the parties stipulated that 2012 was the correct year to report the proceeds of the Immucor stock sale; that petitioner's aggregate basis in the Immucor stock was $11,000; that her gain on the sale was $1,706,038; and that this gain was properly taxable as long-term capital gain for 2012.  After accounting for these items the parties stipulated that petitioner is liable for a deficiency for 2012 in an amount to be determined by the parties' Rule 155 computations and (if we hold for respondent as to the penalty) a penalty under section 6662(a) equal to 20% of the portion of the underpayment attributable to the deficiency as thus revised.

## OPINION

The Code imposes a 20% penalty on the portion of any underpayment of tax attributable to "[n]egligence or disregard of rules and regulations" or "[a]ny substantial understatement of income tax."  Sec. 6662(a) and (b)(1) and (2).  Negligence includes "any failure to make a reasonable attempt to comply" with the in-

---

[3](...continued)
year 2012, the $174,359 overpayment shown on the 2011 return will be applied for petitioner's 2012 taxable year.  Because we hold that petitioner is not liable for any penalty, the application of the overpayment is irrelevant for penalty computation purposes.  That said, respondent has provided no reason to believe that petitioner's overpayment for 2011 should not properly be applied against her 2012 tax liability.

[*11] ternal revenue laws. Sec. 6662(c). An understatement of income tax is "substantial" if it exceeds the greater of $5,000 or 10% of the tax required to be shown on the return. Sec. 6662(d)(1)(A). Under section 7491(c) respondent bears the burden of production with respect to the liability of any individual for any penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Respondent has met his burden of production regarding negligence. Petitioner did not report the proceeds from the Immucor stock sale on any tax return, which she concedes was error; this concession satisfies respondent's burden of production. See id. at 447. Depending on the Rule 155 computations, it seems likely that respondent will also have met his burden of production by showing a "substantial understatement" of income tax.[4]

In either case, a taxpayer may avoid the accuracy-related penalty by showing that she acted with reasonable cause and in good faith. Sec. 6664(c)(1). Reasonable cause requires that the taxpayer exercise ordinary business care and prudence as to the disputed item. See Neonatology Assocs., P.A. v. Commissioner,

---

[4]Petitioner contends that respondent did not satisfy his burden of production with respect to the accuracy-related penalty because he did not produce sufficient evidence that the penalty received written approval from "the immediate supervisor of the individual making such determination." See sec. 6751(b)(1); Chai v. Commissioner, 851 F.3d 190 (2d Cir. 2017), aff'g in part, rev'g in part T.C. Memo. 2015-42. Because we hold that petitioner is not liable for any penalty, we need not decide this question.

**[\*12]** 115 T.C. 43, 98 (2000), <u>aff'd</u>, 299 F.3d 221 (3d Cir. 2002).  Good faith means, among other things, an honest belief and an intent to perform all lawful obligations.  <u>E.g.</u>, <u>United States v. Hirschfeld</u>, 964 F.2d 318, 322 (4th Cir. 1992).

Both of these determinations are made on a case-by-case basis, taking into account all relevant facts.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Circumstances that may indicate reasonable cause and good faith include (among other things) an honest misunderstanding of fact or law that is reasonable in light of all the circumstances, including the taxpayer's experience, knowledge, and education.  The most important factor is the taxpayer's efforts to assess her tax liability correctly.  <u>Ibid.</u>

A taxpayer may demonstrate reasonable cause and good faith by showing reliance on the advice of a tax professional, such as an accountant or a lawyer, regarding a particular item's tax treatment.  Sec. 1.6664-4(c)(1), Income Tax Regs.  To rely in good faith on the advice of a professional, the taxpayer must show that: (1) the adviser "was a competent professional who had sufficient expertise to justify reliance"; (2) "the taxpayer provided necessary and accurate information to the adviser"; and (3) "the taxpayer actually relied in good faith on the adviser's judgment."  <u>Neonatology Assocs.</u>, 115 T.C. at 99.[5]

---

[5] With respect to the penalty for substantial understatement, we agree with respondent that petitioner did not have "substantial authority," within the meaning

(continued...)

**[\*13]**  Before turning to the three-pronged <u>Neonatology</u> test, we first consider petitioner's own conduct to determine whether she exercised "ordinary business care and prudence."  In contending that she did not, respondent relies principally on the documents she received from Computershare in January 2012.  Those documents include a check dated January 4, 2012; a letter stating that the redemption was "processed" on that same date; and a "Corporate Action Advice" stating that the "tax year" was 2012 and that the "payment date" was August 19, 2011.  Respondent contends that a person exercising "ordinary business care and prudence" would have understood from these documents that any gain from the Immucor stock sale would be properly reportable on a tax return for 2012.

We do not agree.  Although petitioner is a highly educated person and a skilled physician, she had no knowledge of Federal income taxation.  She had tendered her stock to Immucor for redemption in December 2011.  Although the documents she received in January 2012 said that her redemption was "processed" on January 4 and that the "tax year" was 2012, they also stated that the "payment date" was August 19, 2011.  As a lay person unfamiliar with tax law, stock re-

---

⁵(...continued)
of section 6662(d)(2)(B)(i), for failing to report the Immucor sale proceeds on her 2012 return.  But she can still defend successfully against the penalty by demonstrating that she acted with reasonable cause and in good faith, e.g., by showing reliance on the advice of a competent tax professional.

**[\*14]** demptions, and corporate reorganizations, petitioner understandably found this documentation confusing and reasonably referred this question to her longtime tax return preparer.

Given the time value of money, it would obviously have been in petitioner's economic interest to report her million-dollar gain on a 2012 return rather than on a 2011 return. We think that she displayed admirable "business care and prudence" by referring this question to Mr. Whittemore and accepting his advice to report the gain for 2011, rather than deciding unilaterally what would be best for her pocketbook. Petitioner precisely followed all of Mr. Whittemore's instructions; she forwarded all relevant tax documents to him for his review and evaluation; she sent tax payments to the IRS (on one occasion, unnecessarily) as he told her to do; and she timely replied to communications she received from the IRS (while laboring under the justifiable but mistaken belief that he had filed her 2011 return electronically). See supra pp. \*7-\*8. Evaluating her conduct as a whole, we have no doubt that she exercised "ordinary business care and prudence."

We now consider whether petitioner has established a "reliance on professional advice" defense to the accuracy-related penalty under the Neonatology test.[6]

---

[6]Respondent errs in contending that the Supreme Court's opinion in United States v. Boyle, 469 U.S. 241 (1985), prevents petitioner from asserting this

(continued...)

[*15] Petitioner must first show that Mr. Whittemore was "a competent professional who had sufficient expertise to justify reliance."  See Neonatology Assocs., 115 T.C. at 99.  Mr. Whittemore has a well-established tax return preparation business; he specializes in preparing returns for physicians such as petitioner; and he had prepared returns for petitioner and her ex-husband for many years with no IRS challenge apart from an occasional math error.  Although he was not a certified public accountant, petitioner assumed that he was because he was a member of several accounting societies.  Petitioner had every reason to believe that Mr. Whittemore was a competent tax professional with sufficient expertise to justify her reliance.

As respondent notes, Mr. Whittemore committed many errors in handling petitioner's 2011 and 2012 tax returns.  He incorrectly computed her basis in the

---

[6](...continued)
defense at all.  The IRS in Boyle had determined an addition to tax under section 6651(a)(1) for late filing of an individual income tax return.  Holding that taxpayers have a nondelegable duty to file tax returns on time, the Court held that the taxpayer could not defend against the late-filing addition to tax by citing his attorney's negligence in failing to file the return timely.  Id. at 251-252.  The Court recognized that the outcome might be different if the attorney had affirmatively advised the taxpayer that no return was due or that the return was not due until a specified future date.  Id. at 250.  Boyle is inapplicable here for two reasons:  (1) in this case the IRS determined an accuracy-related penalty, not a late-filing addition to tax and (2) Mr. Whittemore affirmatively advised petitioner that the Immucor sale proceeds should not be reported on her 2012 return.

**[\*16]** Immucor stock; he gave her erroneous advice about the year for which her gain should be reported; and he neglected to efile her 2011 return as he had promised to do. But whenever a taxpayer advances a "reliance on professional advice" defense against an accuracy-related penalty, the adviser will have made one or more mistakes. If the taxpayer is completely unaware of the adviser's errors, as was true here, those errors cannot be used retroactively to demonstrate the adviser's lack of competence. We find that petitioner has sufficiently demonstrated Mr. Whittemore's competence by reason of his knowledge and experience in preparing tax returns and that she was justified in relying on him. See sec. 1.6664-4(b), Income Tax Regs.; cf. Bowen v. Commissioner, T.C. Memo. 2001-47 (holding that the taxpayers failed to prove that their return preparer was a competent tax adviser where they did not introduce any evidence regarding his credentials or his knowledge and experience in preparing tax returns).

The second prong of the Neonatology test requires the taxpayer to show that she provided "necessary and accurate information" to the professional. Neonatology Assocs., 115 T.C. at 99; see Ma-Tran Corp. v. Commissioner, 70 T.C. 158, 173 (1978). This means that the taxpayer must disclose all facts that she knows, or reasonably should know, are relevant to the proper tax treatment of an item. See sec. 1.6664-4(c)(1), Income Tax Regs. As applied here, the question is wheth-

[*17] er petitioner supplied Mr. Whittemore with all facts and documents necessary for him to determine the proper tax year for reporting her gain on the sale of the Immucor stock.

The answer to this question is clearly "yes." Petitioner credibly testified that she had spoken with Mr. Whittemore in January 2012 and told him the sale price for the Immucor stock. To enable him to prepare her 2011 return, she supplied him with the documentation she had received from Computershare in January 2012, including the ambiguous "Corporate Action Advice." Shortly after receiving the Form 1099-B from Computershare in early 2013, she forwarded that document to Mr. Whittemore. In October 2013 she provided him with her 2012 tax "organizer" and specifically brought the Immucor stock sale to his attention, noting her recollection that this sale had been reported for 2011. In short, when Mr. Whittemore started preparing petitioner's 2012 return, he had all of the information he needed. After reviewing this information he determined that the Immucor sale proceeds should not be reported for 2012 because (he thought) those sale proceeds had already been reported for 2011. Petitioner cannot be blamed for this erroneous decision.

The third prong of the Neonatology test requires the taxpayer to show that she "actually relied in good faith on the adviser's judgment." Neonatology

[*18] <u>Assocs.</u>, 115 T.C. at 99. Good faith or lack thereof is determined by looking at all of the facts and circumstances in the case, including the taxpayer's "experience, knowledge, and education." Sec. 1.6664-4(b)(1), Income Tax Regs.; see also <u>id.</u> para. (c)(1).

Petitioner is a medical doctor with no training in tax return preparation or corporate law. She had retained Mr. Whittemore to prepare her returns for many years, and none of those prior returns had prompted a serious IRS challenge. Petitioner indisputably relied on Mr. Whittemore's judgment that the Immucor sale proceeds should be reported for 2011 rather than 2012. And her reliance clearly displayed good faith. The documentation Computershare furnished was confusing to a lay person, and petitioner reasonably referred the timing question to him.

This is not a case where the adviser's judgment about the recommended tax treatment was "too good to be true." Quite the contrary: As noted previously, Mr. Whittemore's advice was contrary to petitioner's economic interest, but she nevertheless accepted it. In our view, this constitutes proof positive of her good faith.[7]

---

[7]Respondent contends that Mr. Whittemore's basis computation for the Immucor stock, $639,437, was so far from what petitioner now concedes to be the correct number, $11,000, that she could not have relied in good faith on his estimate. Again we disagree. The original 4,000 shares had been purchased in 1982; she had acquired them from her ex-husband in 1998; and they had mushroomed to 63,594 shares because of stock splits and (Mr. Whittemore erroneously told her)

(continued...)

**[\*19]**  We hold that petitioner acted with reasonable cause and in good faith in failing to report the proceeds from the Immucor stock sale on her 2012 return.  She honestly believed that those proceeds had been reported on her 2011 return, as Mr. Whittemore had assured her.  A lay person in her position would naturally assume that proceeds from a single stock sale should not be reported on tax returns for two successive years.  She spent considerable time trying to determine her correct tax liability for 2011 and 2012; she communicated extensively with Mr. Whittemore and the IRS over the entire period; and she generally acted in a manner that we find reasonable for a person with her level of experience and knowledge.  Petitioner has adequately demonstrated that she provided all necessary information to Mr. Whittemore and that the mistakes on her returns are attributable to him.  See Yguico v. Commissioner, T.C. Memo. 2015-230, 110 T.C.M. (CCH) 505, 507 (citing Weis v. Commissioner, 94 T.C. 473, 487 (1990)).

---

[7](...continued)
reinvested dividends.  Petitioner did not have records going back 30 years, and she had no knowledge of how "basis" in corporate stock should be computed under these circumstances.  She reasonably left this determination to her tax adviser and reasonably relied on his advice.

**[*20]**  To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.